...into the first case before us, the Sikh Cultural Society vs. U.S. Citizenship and Immigration Services. Good morning, Your Honor. The issue before this court is much the same as it recently was before the Third Circuit in Shillong Pentecostal Church vs. Acting Secretary, United States Department of Homeland Security. And that is whether the agency may deny a petition on the grounds that was not intended by Congress to be a requirement for that petition. In Shillong, the issue was whether or not the two years of experience carrying on a religious vocation prior to the filing of the petition could be done when the person was not in an authorized state of employment. The CIS actually adopted a regulation stating that a person could not carry on employment as a religious worker if they were unauthorized, or that that would not count towards the two years. But the Third Circuit rejected that because they said that this was clearly not a factor which Congress intended to be considered. And the Third Circuit relied upon two reasons. Well, the Third Circuit relied upon several reasons, but two of them are directly applicable to this case. One was the definition of what constitutes the phrase, carry on. The regulation, excuse me, the statute requires that one have carried on work as a religious worker for two years prior to a special immigrant religious worker petition being filed upon one's behalf. The Third Circuit looked very carefully at the meaning of this phrase, carry on, and could find nothing in that phrase which indicated that one had to be in an authorized state of employment, one had to have employment authorization to carry on an occupation as a religious worker. By the same token, here the CIS has denied this petition in large part because the petitioner was unable to prove that the beneficiary here was compensated for his work as a religious worker during the two years prior to the petition being filed. And again, there is nothing in the definition of carry on which requires that a religious worker be compensated for that work. The Third Circuit also relied very heavily upon the Supreme Court's decision in Rosello in which they said that where the section, where the Immigration Act refers in numerous sections to a certain requirement, if it doesn't refer to that requirement in the section under discussion, that is a clear and sign that Congress did not consider that factor be taken into consideration. And the Immigration and Nationality Act is chock full of requirements that aliens be paid for their employment. We just pointed, just going up through section 1182 of the Act, we found eight such examples which we pointed out in our brief. But again, the provision pertaining to special immigrant religious workers contains no such section, contains no such requirement. So applying the reasoning of Shalom and Rosello to this case, one must come to the conclusion that whether or not Mr. Singh was paid for his employment while he was carrying on the occupation of a special immigrant worker is simply not a factor which Congress intended to be considered in determining whether or not a religious immigrant worker petition could be approved upon his behalf. And of course, as we know from the Supreme Court's decision in Motor Vehicle Manufacturers Association versus State Farm Mutual Auto Insurance, an agency's decision is arbitrary and capricious if it is relied upon factors which Congress has not intended to consider. Now, the agency has tried to reshape this issue into a matter of credibility. And they've said that the issue here is not, we don't, I mean, even though they're all the cases, the only issue that's argued about below is whether or not the man was paid and in fact, how much he was paid and whether and where he, and how he was paid. They said, well, what this is really about is credibility. But this court has ruled repeatedly in cases of asylum applicants that where a person, where there are inconsistencies pertaining to a matter which is not central to the issue, that that is not a valid basis for denial. Now, an asylum applicant, an asylum application is just another application for an immigration benefit. There's no reason why this rule should not be applicable here. Furthermore, the agency has completely failed to show even a single case in which an application for benefits under the Administrative Procedures Act has been properly denied for immaterial inconsistencies. They cited six cases in their brief, but in every single case, one of those cases, the inconsistency was directly material to the issue. The inconsistency was at a point in which the plaintiff bore the, which the applicant bore the burden of proof. That isn't here. This entire decision is based upon irrelevancies, and this court should reject it. Thank you. You've reserved two minutes. Yes, Your Honor. May it please the Court, Elliot Shachner, Assistant United States Attorney, Eastern District of New York, on behalf of USCIS. The plaintiff's argument is based on the Shalom or Shalom case. That case, though, is besides the point, is beside the point here. The issue here, really, contrary to what counsel said, is indeed credibility. Most notably, the SCS's briefing is most notable for what it, not what it says, but what it doesn't say. It ignores the most troubling, the two most troubling aspects of SCS's submissions to the administrative agency. First, Singh's disavowal of the affidavit purportedly signed by him that SCS had submitted to USCIS in 2012, and secondly, SCS's submission of a Form W-2 for Singh that SCS concedes was altered, without offering any explanation for the alterations. In view of those deficiencies, combined with the inconsistencies that SCS does address in its brief, USCIS did not act arbitrarily or capriciously in denying the visa application at issue here. And that conclusion is especially appropriate because it was SCS that bore the burden of proving that the petition should be granted. Moreover, there are discrepancies that we've addressed in our brief that SCS does at least mention in its brief, especially regarding two key matters, the location of the housing that SCS allegedly provided to Singh, and the amount of monetary compensation that SCS allegedly paid him. Some documents have him resigning at the temple, other documents... What's your view of what's really going on here? Trying to thread that needle, Your Honor, and to use a term of common parlance is very difficult. I don't know how we can resolve all those inconsistencies. I don't know how a person can live in one place and another simultaneously. I don't know how a person... There's a significant effort to make sure that his filing is approved. Well, there's a lot of effort in that there were, I guess, four different motions for reconsideration and re-argument, and there was a lot of patience on the part of USCIS in addressing each of those motions. You have more visibility than I do on what's really going on. No, I don't have any inside information, Your Honor. It is, quite frankly, rather befuddling. And as to counsel's argument that the inconsistencies are immaterial, again, that ignores the submission of the altered W-2 form and Singh's disavowal of his declaration. Counsel relies, and SCS relies, on the Li Zong case, which involves asylum. And, in particular, acts of persecution. Well, persecuted people generally don't keep records or are not given records of acts of persecution, so it's understandable that there might be discrepancies in the date when certain conduct occurred. Perfectly understandable, and, of course, in Li Zong, this court understood that and realized that there very well can be some discrepancies and that discrepancies may be minor enough to not affect an ultimate credibility finding. But we're talking here about conduct events that happened here in the United States, basic conduct, like where a person lives or lived, how much a person was paid. Those are things that can be documented and commonly are documented and should be documented. And if there isn't any documentation to support claims in a petition, USCIS certainly is within its authority to deny a petition. Certainly it doesn't act arbitrarily or capriciously or contrary to law by saying if a petition contains certain factual representations but the documentary evidence in support of that petition is literally all over the map, that petition should be denied. Thank you very much. Thank you, Your Honor. Mr. Biston is reserved two minutes. Your Honor, I wish to thank my honored colleague because far from rebutting our point, he's actually reinforced it. This case is all about the petitioner's inconsistencies on an issue which even the government does not claim is relevant to the matter. Just one point about the Alter W-2. The Alter W-2 wasn't even filed in this case. The Alter W-2 was filed in another case two years after this petition was filed. So what relevance that in itself is, I think, an abuse of discretion for them to rely upon that. But the issues of this Mr. Singh can't even speak English. I mean, who knows what he... Mr. Biston, wasn't the Alter W-2 submitted in support of one of the motions to reopen or re-argue? No, it was not. It's not in this record at all? The government put it in this record because it serves their purpose. Where did the government get it? They got it from a petition which the Sikh Society subsequently filed for Mr. Singh in trying to extend his R-1 status. Two years after this petition was filed. It's certainly a well-established rule that the petitioner must have all the evidence needed to establish his case at the time as the petition is filed. By the same token, I think the government should have all the evidence that they're going to refute his eligibility at the time it's filed, not bring out something that was filed in a different case. Was it in this case that there was a request by the government for the relevant W-2? No. Your Honor, we may have submitted it after they brought it up themselves just to show that there was nothing nefarious about this quote-unquote Alter W-2. But it was the government, it was the A.A.O. which brought it up. We never introduced it. There was a request for it with respect to the petition in the present case, was there not? To be perfectly frank with you, Your Honor, I believe not, and I can tell you why I don't think so. Because the Administrative Appeals Office does not make requests. The Administrative Appeals Office simply adjudicates what's before it. The level below, the district level or the Regional Service Center, they make requests for evidence. The Administrative Appeals Office does not make requests for evidence. And it was this issue certainly only came up before the A.A.O. And I'm quite certain that the record will show that the A.A.O. brought it up first and then we submitted it with a statement from the accountant saying basically that all these so-called alterations were just correcting typographical errors. Thank you, Mr. Piston. Thank you. We'll reserve the decision.